BATTIN v. TAGGERT.   See Case No. 1,107.

BATTISTE, (UNITED STATES v.)   See Case No. 14,545.

---

## Case No. 1,109.

### BATTLE v. MUTUAL LIFE INS. CO.

[10 Blatchf. 417.] [1]

Circuit Court. S. D. New York.   Feb. 12, 1873.

EQUITY—PLEADING—AMENDMENT—ADMISSIONS IN ANSWER.

1. A plaintiff, in a suit in equity, can recover only upon the case made by his bill, and not upon that made in the evidence.

2. An admission in the answer will be of no use to the plaintiff, unless it is put in issue by some charge in the bill.

3. On final hearing, the court announced, that, on the pleadings and proofs, as they stood, it was impossible to grant to the plaintiff the relief prayed for. The plaintiff then moved for leave to amend the bill. It appearing, that, by making the amendments proposed, the bill and the answer would agree in their statements, in the particulars covered by such amendments; that the evidence and the answer made out a case for relief to the plaintiff, but a case different from the one stated in the bill; that the purposes of substantial justice required that the amendments should be made; that the amendments did not change the subject matter of the bill; and that no decree had been passed: Held, that the motion ought to be granted, on payment of costs.

[Cited in Hardin v. Boyd. 113 U. S. 765. 5 Sup. Ct. 775; Maynard v. Tilden, 28 Fed. 703.]

4. Held, also, that, although some testimony on the part of the plaintiff might be in conflict with the amendments, yet, as the amendments harmonized with the allegations of the answer, and such testimony was not testimony sustaining the allegations of the answer, the point was immaterial.

5. The case of Neale v. Neale. 9 Wall. [76 U. S.] 1. commented on, and held to warrant the allowance of such amendments.

[In equity. Bill by Madeline C. Battle against the Mutual Life Insurance Company of New York. Heard on complainant's motion for leave to amend. Granted.]

Charles F. Sanford, for plaintiff.
Henry E. Davies, for defendants.

---

[1] [Reported by Hon. Samuel Blatchford. District judge, and here reprinted by permission.]

BLATCHFORD, District Judge. It is a well settled rule, in a suit in equity, that the plaintiff can recover only upon the case made by his bill, and not upon that made in the evidence. It is equally well established, that, if an admission is made in the answer, it will be of no use to the plaintiff unless it is put in issue by some charge in the bill. Hence, the plaintiff is frequently obliged to ask leave to amend his bill, although a clear case for relief is apparent upon the face of the pleadings. Thus, where a bill against an executor prays an account of the personal estate of the testator, on the ground that the executor has received assets, but does not charge any acts of mismanagement in the executor, no decree for an account can be had as to acts of mismanagement, although the answer discloses such acts, and shows that, in consequence of them, no assets were received. The reason is, that such matter is not matter in issue. Story, Eq. Pl. (8th Ed.) §§ 262a, 264.

In the present case, the answer admits and avers that the plaintiff duly made payment of the premiums on the policies in question in each year to and including the year 1861, (such payments for the year 1861 falling due on the 21st of May in that year. It also avers, that the appointment of McCoy, as agent of the defendants at Mobile, was revoked by the defendants on the 26th March, 1861; that notice thereof was given to McCoy and to the plaintiff; and that, since that date, the defendants have had no agent in the state of Alabama. The substance and effect of the allegations in the answer is, that the plaintiff had notice of the revocation of March 26th, 1861, whenever, after that date, she made, or attempted to make any payment of premium to McCoy, as agent of the defendants. There is, moreover, a distinct allegation, in the answer, that if the plaintiff, after the 26th of March, 1861, made any payments to McCoy, as the agent of the defendants, she made the same in her own wrong, with full knowledge that he had no power or authority to receive the same, or to act as such agent. Yet the answer admits that the plaintiff paid the premiums due May 21st, 1861. The bill avers that such payment was made to the defendants through McCoy, as their agent. The answer avers that such payment was made to the defendants by the plaintiff through McCoy, and that the defendants received the money from McCoy as the agent of the plaintiff.

The bill avers the due payment of premiums, by the plaintiff, to the defendants, through McCoy, as their agent, for the years 1862, 1863 and 1864. At the hearing, the counsel for the plaintiff stated that the plaintiff desired to abandon the position of the bill, that there was any payment of premiums made by her after the payment of 1861, and to accept the position of the answer, that the appointment of McCoy, as agent, was revoked in March, 1861, and that she had notice of

such revocation, and, consequently, to admit, that no payment made to McCoy after the payment of 1861 was a valid payment to the defendants, and to claim the benefit of all the legal consequences flowing from such revocation and notice. But the court found it impossible, consistently with the principles before stated, to allow the plaintiff to take such a course, on the allegations found in the bill, for the reason, that the bill avers, that the plaintiff paid, through McCoy, as the agent of the defendants, on the 21st of May in each of the years 1862, 1863 and 1864, the premiums due on those days; that, on the 21st of May, 1865, she did not pay the premium then payable, because the agency of McCoy, as she was informed and believed, had been theretofore revoked, and no one had been appointed in his place; that the defendants pretend that the agency of McCoy was revoked on or before the 21st of May, 1862; that the contrary of such pretence is true; that she had no notice of any such revocation; and that she dealt with McCoy, as such agent, in good faith. The purport of these allegations is, that the payment for 1862, through McCoy, was valid, because his agency was not revoked on or before the 21st of May, 1862; that she had no notice, before that date, of any such revocation; that she dealt with McCoy, as the defendants' agent, in good faith, in paying the premiums due in 1863 and 1864 as well as in 1862; and that she failed to pay the premium due May 21st, 1865, because the agency of McCoy, as she had by that time been informed, had been before that time revoked, and there was no agent in his place. In other words, it is substantially alleged, in the bill, that the agency of McCoy was not revoked on or before the 21st of May, 1864, but was revoked before the 21st of May, 1865, and the plaintiff was informed thereof by the latter day; that the plaintiff made due payment, through McCoy, as the defendants' agent, for the years 1862, 1863 and 1864; and that such revocation and information, and the fact that there was no new agent in McCoy's place, was the reason why the plaintiff did not pay through McCoy, or through any agent of the defendants in Mobile, the premiums due May 21st, 1865.

The allegations of the answer, of which the plaintiff desired to take advantage as admissions, could not be regarded as admissions, because they were not alleged, as facts, in the bill. On the contrary, facts inconsistent with them were alleged in the bill to be facts of the case. The court, on the pleadings and the evidence, found it impossible not to say, that, as respected the plaintiff, the agency of McCoy, as agent of the defendants at Mobile, continued until after the 21st of May, 1863; that she could have made payment to him there of the premiums due on that day; and that, she having failed to do so, there was a default on her part in complying with the conditions of the policies, whereby they were forfeited. The

court, therefore, announced, that, on the pleadings and proofs as they stood, it was impossible to grant to the plaintiff the relief prayed for.

The plaintiff now moves for leave to make sundry amendments to the bill, alleging, on affidavit, that the bill is in error in stating that she paid, through McCoy, the premiums for 1862, 1863 and 1864, and that the amendments which she desires to make accord with the admissions and averments of the answer, and with the facts of the case, and with the proofs heretofore taken in the cause.

The first three amendments proposed are these: The bill alleges that the plaintiff, "until the 21st day of May, in the year 1865," paid to the defendants, through McCoy, their duly authorized agent, the premiums as they became due, and so paid in each of the years 1862, 1863, and 1864, the sum of $403, making, with previous payments, a total of $4,836. By the amendments proposed, the bill will allege, that the plaintiff, "until the 21st day of May, in the year 1862," paid to the defendants, through McCoy, their duly authorized agent, the premiums as they became due, making an aggregate of payments, of $3,627. The answer alleges, that the premiums were paid until and including those for 1861, and that none were paid after those for 1861. It is true, that the answer, while admitting that McCoy was the agent of the defendants at Mobile, for certain purposes, from 1853, until March, 1861, and that he received from the plaintiff and forwarded to the defendants, the premiums she paid, from and including 1853, to and including the premiums due May 21st, 1861, avers that, in receiving and forwarding such premiums, he acted as the agent of the plaintiff. But, as the bill, with such three proposed amendments, and the answer, will agree in the statement that the plaintiff paid, and the defendants received, the premiums payable until and including those for 1861, and none after those for 1861, the question as to how those acknowledged payments were made, becomes immaterial. The bill and the answer will agree in the only statement that is material.

The next amendment proposed is this: The bill alleges that the plaintiff, on the "21st of May, 1865," and thereafter, was ready to pay all premiums as they became due, but that she did not, on or after the "21st of May, 1865," pay any of such premiums, because the agency of McCoy, as she was informed and believed, had been theretofore revoked, and no one had been appointed in his place. By the amendments proposed, the bill will allege, that the plaintiff, on the "21st of May, 1862," and thereafter, was ready to pay all premiums as they became due, but that she did not, on or after the "21st of May, 1862," pay any of such premiums, because the agency of McCoy, as she was informed and believed, had been theretofore revoked, and no one had been appointed in

his place. The answer alleges, that the defendants, on the 26th of March, 1861, revoked the agency of McCoy, and gave notice thereof to him and to the plaintiff, and that if she, after that date, made any payments to him, as the agent of the defendants, she made the same in her own wrong, with full knowledge that he had no power or authority to receive the same, or to act as such agent. The defendants, in the answer, acknowledge the receipt of the premiums of 1861, through McCoy, not as the agent of the defendants, but as the agent of the plaintiff. The bill, with this proposed amendment, and the answer, will, therefore, agree in the statement that before the time for making the payments due May 21st, 1862, came around, the agency of McCoy had been revoked by the defendants, and notice thereof had been given to the plaintiff.

The next amendment proposed is this: The bill alleges, that the defendants pretend that the agency of McCoy had been revoked by them on or before the 21st of May, 1862. By the amendment proposed, the bill will allege, that the defendants pretend that the agency of McCoy had been revoked by them on or before the 21st of May, 1861. The answer, as before shown, alleges, that the agency of McCoy had been revoked by the defendants on the 26th of March, 1861. The bill, with this proposed amendment, and the answer, will, therefore, agree in the statement, that the defendants pretend that the agency was revoked on or before the 21st of May, 1861. The bill will then, if the above amendment is allowed, go on to say, that it is not true that the agency of McCoy was revoked on or before the 21st of May, 1861. One object of such amendment appears to be, to have the bill thus aver, that the agency of McCoy continued until after the 21st of May, 1861, so as to make valid the payments, through McCoy, of the premiums due on that day. As before stated, such averment is not material for such purpose. In this connection, the bill is further proposed to be amended, so as to deny that the plaintiff had any notice, until after the 21st of May, 1861, of any revocation made on or before the 21st of May, 1861. One object of this amendment appears to be, to have the bill deny any notice of any revocation of the agency of McCoy, which could invalidate the payments, through McCoy, of the premiums due May 21st, 1861. But, as before stated, such a denial is not material for such purpose. But, there is a point of view in which the last named two proposed amendments are material. The bill now avers, that it is not true that the agency of McCoy was revoked by the defendants on or before the 21st of May, 1862, and denies that the plaintiff had any notice of any such revocation. Changing this to an averment that it is not true that the agency of McCoy was revoked by the defendants on or before the 21st of May, 1861, and to a denial that the plaintiff

had any notice of any such revocation until after the 21st of May, 1861, is a necessary change, so far as concerns the making the bill no longer aver that it is not true that the agency was revoked on or before the 21st of May, 1862, and the making it no longer deny that the plaintiff had any notice of such revocation, because, one of the previous amendments will have made the bill aver, that, on the 21st of May, 1862, the agency of McCoy, as the plaintiff was informed and believed, had been theretofore revoked. Such object will be effected by the statement, that the agency was not revoked on or before the 21st of May, 1861, and by the denial that the plaintiff had any notice of any such revocation until after the 21st of May, 1861. These two amendments, therefore, will be consistent with the other amendments, and with the allegations of the answer.

It is strenuously insisted, on the part of the defendants, that no case can be found where a plaintiff in an equity suit has been allowed to amend the bill at the stage of the cause which has been reached in this suit. But I understand the decision of the supreme court in Neale v. Neale, 9 Wall. [76 U. S.] 1, as fully warranting the allowance of the amendments now asked for. In that case, a bill was filed by a husband and his wife, against the father of the husband, alleging a promise by the father to give to the son or to his wife, a lot of land, so that a house might be erected on it, with her money, for their home, and the erection of the house with her money, and the refusal of the father to give a deed of the house and lot to her, and his occupation and possession of the same, and praying that he might make such deed to her and her heirs, or to some one in trust for her and their benefit, and account for the rents. The evidence showed a promise to give the lot to the wife, so that a house might be built on it with her money, and the erection of the house on the lot with her money, with the consent of the father, and on the faith of such promise; and the answer, in substance, set forth that state of facts. The case was heard, and, after hearing it, and after considering the proceedings, the court, of its own motion, and without assigning any reason, ordered that the plaintiffs have leave to amend their bill, on payment of costs. The bill was amended, so as to allege, that the father promised to give the lot to the wife, on the understanding that her money should be expended in building a dwelling house on it for herself and her heirs. On the amended pleadings, and on substantially the original evidence, the case was heard again, and a decree made, that the father should make a deed to a trustee, of the house and lot, for the sole use and benefit of the son's wife, and account for the rents since the filing of the bill. It is apparent, that the court considered that, although the answer and the evidence showed a case for relief, in favor of the wife, the relief prayed for could

not be given on the bill as originally framed. The court considered the proofs, on the pleadings as they were, and made a decision, that, on the bill as it was, the relief asked could not be given. But, instead of entering a decree to that effect, it gave the plaintiffs, without a motion to that effect by the plaintiffs, leave to amend the bill. The defendant appealed from the decree of the supreme court, and it was there urged, for him, that the bill could not be amended, after publication had passed, and the case had been set down for hearing, in any other respect than by making new parties; that the original bill recognized the marital rights of the husband, and the amended bill set up a claim adverse to such marital rights; and that this changed the framework of the bill and made a new case. On this point, in its decision, the supreme court say: "It would seem clear, from the manner in which the court below, of its motion, and without assigning any reasons for this action, gave the complainants leave to amend their bill, that, on the original hearing, it was satisfied that the evidence made out a case for relief, but a case different from the one stated in the bill; and that, as the pleadings must correspond with the evidence, it was necessary either to dismiss the bill without prejudice, or to give the leave to amend. The court adopted the latter alternative, doubtless, with a view to save expense to the parties, and because such a course could not, by any possibility, work any harm to the defendant. It is insisted that this proceeding was erroneous; that, after a cause has been heard, the power of allowing amendments ceases, or, if it exists at all, cannot go so far as to authorize a plaintiff to change the framework of his bill, and make an entirely new case, although on the same subject matter, as, it is contended, was done in this instance, under the leave to amend. This doctrine would deny to a court of equity the power to grant amendments after the cause was heard and before decree was passed, no matter how manifest it was that the purposes of substantial justice required it, and would, if sanctioned, frequently embarrass the court in its efforts to adjust the proper mode and measure of relief. To accomplish the object for which a court of equity was created, it has the power to adapt its proceedings to the exigency of each particular case, but this power would very often be ineffectual for the purpose, unless it also possessed the additional power, after a cause was heard and a case for relief made out, but not the case disclosed by the bill, to allow an alteration of the pleadings on terms, that the party not in fault would have no reasonable ground to object to. That the court has this power and can, upon hearing the cause, if unable to do complete justice by reason of defective pleadings, permit amendments, both of bills and answers, is sustained by the authorities. Necessarily, in a federal tribunal, the matter of amendment, at this stage of the progress of a cause, rests in the sound discretion of the court. At an earlier stage, this discretion is controlled by the rules of equity practice adopted by this court, but not so upon the hearing, for there is no rule on the subject of amendments, applicable to a cause which has · advanced to this point. As, therefore, the leave to amend, in this instance, was within the discretion of the court, we will proceed to dispose of the case on its merits. It is unnecessary, in the view we have taken of the power of the court over amendments at the hearing, to discuss the question whether the amended bill is materially different from the original bill. It is enough to know, if different, that the subject matter of both bills is the same, and that the contract, consideration, promise, and acts of part performance, stated in the amended bill, are stated with sufficient precision, and, if supported by proof, entitle the complainants to the relief which they seek at the hands of a court of equity." The court then, on the merits, affirm the decree.

In the present case, I was satisfied, on the hearing, that the evidence and the answer made out a case for relief to the plaintiff, but a case different from the one stated in the bill, and that the case was a proper one for an amendment of the bill. I did not grant the leave to amend at once, but left the plaintiff to move for such leave, and to suggest the amendments desired. I only stated that I could not, on the pleadings and proofs as they stood, grant to the plaintiff the relief prayed for, and I pointed out the difference between the allegations of the bill in the Hamilton case and the bill in this case, in reference to the facts attending the revocation of McCoy's agency, and the correspondence between the averments of the answer in the Hamilton case and the answer in this case, as to such facts, and the fact that the parties agreed, in their pleadings, in the Hamilton case, as to such facts, and that they did not agree, in their pleadings, in this case, as to such facts. The power of the court now to grant leave to make the amendments is none the less than if it had granted such leave at the hearing, and of its own motion. The purposes of substantial justice require that the amendments shall be made. The amendments do not change the subject matter of the bill, and no decree has been passed.

It is urged, that the proposed amendments are in conflict with the testimony on the part of the plaintiff; and that the plaintiff proved that premiums on the policies were paid to McCoy, at Mobile, on the 6th of May, 1862, and on the 30th of May, 1863. and also proved that she, or her agents, dealt with him as the agent of the defendants, and that he acted as such down to and including May 30th, 1863. The witness who made the payments at Mobile in 1861, 1862 and 1863 states, that he made them to McCoy, "then residing

in Mobile, and acting as the agent of the company;" that the witness made such payments on account of the plaintiff's husband, (the moneys to pay them having been, as is shown, furnished by the latter;) and that the witness made the payments supposing that McCoy was the agent of the defendants, as he had been so for many years, and the witness had no knowledge of any change of affairs. This evidence was given under an averment in the bill that McCoy continued to be the agent of the defendants until after the alleged payment of 1864 was made, and, in the absence of proof that the letter of revocation was received by McCoy, or that the plaintiff had notice of such revocation, such evidence tended to prove such averment. An allegation that the agency terminated before May 21st, 1862, is, of course, in conflict with an allegation that it continued until after May 21st, 1864, and evidence to support the latter allegation is, of course, in conflict with the former allegation. But, as the amendments to the bill will perfectly harmonize with the allegations of the answer, it is of no consequence to the defendants that some testimony on the part of the plaintiff may be in conflict with the amendments. If the testimony referred to had been testimony sustaining the allegations of the answer, there might, perhaps, be some force in the objection. But, the answer maintains throughout that the agency terminated, with notice of the revocation to the plaintiff, before the payment of 1862 was due, and none of the testimony referred to, given on the part of the plaintiff, tends to sustain such averment of the answer.

As the case falls directly within the principle of the decision in Neale v. Neale, [9 Wall. (76 U. S.) 1,] I must grant leave to make the amendments, on payment of costs.